924 F.2d 1053
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Wilbur L. SIMS, Plaintiff-Appellant,
v.
Vernon POE, Captain, Bobby K. Rakes, Powhatan Correctional
Center, Defendants-Appellees.
 No. 90-6832.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 5, 1990.
Decided Feb. 4, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, District Judge. (CA-87-1286-AM)
 Andrew Robert Sebok, Norfolk, Va., for appellant.
 Carolyn Smith Motes, Motes, Fite and O'Brien, McLean, Va., for appellee Poe.
 Gregory E. Lucyk, Senior Assistant Attorney General, Office of the Attorney General, Richmond, Va. (Argued), for appellee Rakes; Mary Sue Terry, Attorney General, Gail Starling Marshall, Deputy Attorney General, Office of the Attorney General, Richmond, Va., on brief.
 E.D.Va.
 AFFIRMED.
 Before MURNAGHAN, SPROUSE and CHAPMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Wilbur Sims brought an action pursuant to 42 U.S.C. Sec. 1983 against police officers Vernon Poe and Bobby Rakes alleging that they conspired to deprive him of his due process rights under color of law. Sims has alleged that, following his arrest on drug charges, Rakes lied to a magistrate judge and as a result Sims suffered an eight-day delay in obtaining release from jail on bail. Sims further asserted that during the delay a key defense witness absconded and became unavailable for trial.
 
 
 2
 Motions for dismissal were denied by the district court. Following discovery, the defendants moved for summary judgment, which was granted. Sims has now appealed. Although the district court may have accepted as true controverted statements of fact advanced by the defendants, the immateriality of those facts rendered them of no consequence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) (factual disputes that are irrelevant or unnecessary will not be counted for summary judgment purposes). Sims has not been able to discover and produce affidavits or other sufficient factual materials amounting to evidence as to the alleged denial of his right to bail. Consequently, it is not necessary for us to determine whether qualified immunity of the defendants as armed agents of the state applies under the facts present.
 
 
 3
 The question we must address is whether the district court failed to give weight to any relevant factual dispute, thereby committing reversible error in adopting the version of the facts alleged by the defendants when considering their motions for summary judgment. During 1985 and 1986 Virginia State Police Officer Rakes and Powhatan Virginia Sheriff's Department Captain Vernon Poe were engaged in an undercover investigation of drug trafficking in the City of Richmond and Powhatan County. In the course of the investigation, Rakes and Poe purchased methamphetamine (speed) from Sims on three occasions, once in Richmond and twice in Powhatan.
 
 
 4
 Rakes and Poe then testified before grand juries in Powhatan and Richmond; both grand juries issued indictments against Sims and a codefendant, Mary Gordon, charging them with the distribution of controlled substances. The indictments stated on their faces that "the defendant is to be admitted to bail by any judicial officer or magistrate of this Commonwealth upon posting bond in the sum of $5,000.00 with good surety."
 
 
 5
 Capias were issued for the arrest of Sims and Gordon. Pursuant thereto, both were arrested and detained by the Farmville, Virginia police on September 16, 1986. The Powhatan County Sheriff's Department was then notified, and on the afternoon of September 17, defendant Rakes and a Powhatan deputy picked up the pair.
 
 
 6
 Upon return to the Powhatan Sheriff's Department, Magistrate E.L. Boyer served the Powhatan indictment on Sims and Gordon. Sims called his mother, Martha Sims, to ask her to arrange bail. Mrs. Sims, who lives in Virginia Beach, indicated that she could not come until the next day, September 18, 1986. Magistrate Boyer, therefore, committed Sims and Gordon to jail overnight pending bail determinations.
 
 
 7
 On the night of September 17, 1986, Sims was interrogated by Rakes and Poe. Sims alleged that Poe attempted to coerce Sims by threatening to charge Sims with violating his status as an habitual offender, thereby making Sims unable to post bond because of a new pending charge. Poe allegedly made a similar statement to Mrs. Sims. If supported by relevant evidence, such allegations could have been used to resist summary judgment by supporting a claim that the police subverted the bail process so as to use it as a punishment to coerce cooperation. Cf. Zurek v. Woodbury, 446 F.Supp. 1149 (D.Ill.1978) (action for damages under Sec. 1983 for improper detention not barred by fact of pending criminal charge). However, there are no affidavits in the record that support those alleged facts in anything other than a speculative fashion. What support there is is to be found in Sims' deposition:
 
 
 8
 I talked to Poe at the Sheriff's station the day I was arrested. That's when he informed me that if I didn't cooperate with them, that he would try Mary and convict Mary and he would bring this driving charge up. [By driving Sims apparently was violating the terms of his habitual offender status.] And that's when I informed him you do what you got to do, I'll do what I got to do. If you're going to bring up the driving thing, go down and sign it. It's a thousand dollars bond. Tack it right on the end of it. Because it ain't going to make no difference no way.
 
 
 9
 Mrs. Sims' deposition similarly does not proceed beyond the speculation stage.
 
 
 10
 Furthermore, during the interrogation Sims signed away his Miranda rights and admitted his involvement in the drug transactions.
 
 
 11
 On September 18, 1986, Rakes was present in the Powhatan office of Magistrate Boyer when Martha Sims arrived to post bond for Sims and Gordon. Sims has alleged that Rakes then made the unsolicited statement to the magistrate that Sims "had another charge pending against him" and indicated that the pending charge involved Sims' violation of his habitual offender status. Presented with that false information of other, new, pending charges against Sims, Magistrate Boyer, according to Sims, refused to allow Sims out on bond despite the fact that Mrs. Sims was present and able to post the surety required for the bond set the day before. The district judge may have acted too quickly in adopting the defendants' version of the facts, and rejecting Sims' version of the facts to find that
 
 
 12
 After Magistrate Boyer explained to Mrs. Sims what was needed to affect a property bond, he asked Rakes whether any other charges were pending against Sims. Rakes replied that there was indeed another charge pending against Sims pursuant to the City of Richmond indictment. At one point during the bond hearing, Rakes heard Mrs. Sims tell Magistrate Boyer that it might do Sims some good to sit in jail and think about his drug involvement. The Magistrate thereafter decided not to release Sims on bond despite having granted it to Gordon. Rakes had no improper involvement with the Magistrate's decision at Sims' bond hearing.
 
 
 13
 Even assuming arguendo, however, that it may have been improper for the district court to adopt wholesale the defendants' view of the facts, it does not seem that there were material facts in dispute. There was simply not sufficient evidence in the record to support a jury finding that there was a knowing and willful violation of Sims' constitutional rights. The inferences which Sims has sought to draw from the scanty record would be speculative. Sims' own affidavits did not suffice to support a finding of liability.
 
 
 14
 Consequently, Sims remained in jail another eight days before bond was set. When it was finally set, it was for the same amount as had been required by the terms of the three charges he had been arrested for on September 17, 1986; no other charges were pending against him in Richmond or anywhere else. The habitual offender charge was brought two months after Sims' arrest on the drug charges. The warrant for the habitual offender charge when ultimately served alleged that the violation took place in April 1986, some five months before Sims was arrested on the drug charges.
 
 
 15
 In view of the conclusion we have reached on straight-forward summary judgment grounds, it is unnecessary to reach and discuss the defense of qualified immunity. We therefore decline to do so. The judgment is, accordingly,
 
 
 16
 AFFIRMED.